UNITED STATES DISTRICT COURT
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| THE GATES CONDOMINIUM HOMEOWNERS' ASSOCIATION, INC.; GARLAND DAVIES; JOE THOMPSON; DANIEL and VIRGINIA RATHER; and JOHN DOES 1-40, <br><br>  Plaintiffs, <br><br>  v. <br><br> ARROW EXTERMINATORS, INC., <br><br>  Defendant. | CIVIL ACTION <br><br> NO. 1:04-CV-1258-CAP |

**O R D E R**

This matter is now before the court on the plaintiffs' motion to remand [Doc. No. 2-1] and the defendant's motion to reassign this matter to Judge Thrash [Doc. No. 6-1]. For the reasons set forth below, the plaintiffs' motion to remand is GRANTED, and the defendant's motion to reassign is DENIED as moot.

**Factual Background**

The plaintiffs filed the instant action on April 5, 2004, in the State Court of Fulton County, Georgia. The complaint raises a number of state law claims, including claims for fraud, constructive fraud, breach of contract, negligent inspection, negligent treatment, breach of a settlement agreement, and violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"). On May 6, 2004, the defendant, Arrow



Exterminators, Inc. ("Arrow"), removed the action, invoking this court's jurisdiction under 28 U.S.C. § 1331.

The plaintiffs allege that Arrow provided termite treatments and inspections to the Gates community pursuant to an agreement originally entered in January of 1981, whereby the Gates Condominium Homeowners' Association, Inc. ("the Association") paid Arrow on an annual basis for its services. They further allege that under this agreement, Arrow's responsibilities included inspecting the Gates community annually, re-treating homes when necessary, and responding to the needs of individual homeowners, including but not limited to providing written inspection reports.

According to the plaintiffs, homeowners in the Gates community began to discover extensive active termite infestations beginning in late 1996 and 1997. The plaintiffs contend that these infestations and the severe damages they caused were the result of Arrow's failure to adequately treat and inspect the homes in the Gates community, its failure to inform the Association and the homeowners of the true condition of their dwellings, and its purposeful and willful concealment of the presence and extent of active termite infestation within the Gates community. The plaintiffs submit that every home in the Gates community has had to undergo extensive repairs, at a total cost of approximately $7,800,000, and that the infestation caused the value of homes in

the community to decline, even after they were completely repaired. Based on these allegations, the plaintiffs are seeking general, compensatory, treble, and punitive damages, as well as attorneys' fees and other litigation expenses.

## Legal Analysis

### I. The plaintiffs' motion to remand

The removal statute, 28 U.S.C. § 1441(a), provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ."  Thus, removal is proper when a federal court would have original jurisdiction over the case. See id.; Ayres v. General Motors Corp., 234 F.3d 514, 517 (11th Cir. 2000). Jurisdiction in this case is premised on the federal-question jurisdiction statute, 28 U.S.C. § 1331, which gives the district courts subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[1]

Whether a claim arises under federal law for purposes of the statute is generally determined by the well-pleaded complaint rule,

---

[1] According to the pleadings, Arrow is a citizen of the State of Georgia, and at least some of the plaintiffs are also citizens of Georgia. Therefore, the court may not exercise jurisdiction based on diversity of citizenship. See generally 28 U.S.C. § 1332.

which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987). A well-pleaded complaint presents a federal question only where it establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. <u>Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1, 27-28, 103 S. Ct. 2840, 2856 (1983). Thus, a plaintiff may generally avoid federal jurisdiction by asserting claims based exclusively on state law. <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546 (1987).

The party seeking removal--in this case, Arrow--has the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence. See <u>Hobbs v. Blue Cross Blue Shield of Ala.</u>, 276 F.3d 1236, 1242 (11th Cir. 2001). Courts construe removal jurisdiction narrowly and resolve any doubts regarding the existence of federal jurisdiction in favor of the non-removing party. <u>Pacheco de Perez v. AT&T Co.</u>, 139 F.3d 1368, 1373 (11th Cir. 1998).

Arrow contends that jurisdiction in this court is proper because the plaintiffs' state RICO claim "has as an essential

element the existence of a right under federal law." Def.'s Resp. to Pl.'s Mot. to Remand, at 2. In support of this argument, Arrow points to the Eleventh Circuit's decision in <u>Ayres</u> that federal question jurisdiction was available for a state RICO claim because "a violation of the federal mail and wire fraud statutes is an essential element of the Plaintiffs' cause of action, the proof of which involves resolution of a substantial, disputed question of federal law." 234 F.3d at 518. The <u>Ayres</u> court noted that resolution of the state RICO claim in that case depended entirely on interpretation of the federal mail and wire fraud statutes and their interaction with the National Traffic and Motor Vehicle Safety Act ("Safety Act") and, more specifically, on resolution of the question of whether a breach of the disclosure duty under the Safety Act constitutes a federal mail and wire fraud crime. <u>Id.</u> at 518-19. Ultimately, the court found that there was federal question jurisdiction because not only did the case involve the necessity for the plaintiffs to prove, as an essential element of their state law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, but it also presented a "very substantial federal question" in the proof of the alleged mail and wire fraud crimes, namely, whether the alleged violations of the Safety Act constitute federal mail and wire fraud crimes. <u>Id.</u> at 520.

The Ayres court warned, however, that it was not holding that every state RICO claim that depends on proof of federal mail or wire fraud as predicate acts establishes federal subject matter jurisdiction:

> [T]o find federal jurisdiction in this case, we need not go so far as to hold that *every* state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud statutes establishes federal question jurisdiction.[10] The particular controversy in this case may very well make this case one of those exceptional cases requiring that we decide "a federal question substantial enough to confer federal question jurisdiction." City of Huntsville [v. City of Madison], 24 F.3d [169,] 174 [(11th Cir. 1994)].
>
> [10] Thus, we do not so hold.

Id. at 519 (emphasis in original). The court also indicated that its decision did not necessarily overrule those district court cases that have held that a complaint asserting violations of the federal mail and wire fraud statutes as predicate acts to a state RICO statute is not sufficiently substantial to confer federal jurisdiction, as "[n]othing in those cases suggests a federal question of the magnitude involved here, and thus they are distinguishable." Id. at 520 n.12.

In this case, unlike Ayres, the plaintiffs' state RICO claim does not present a substantial question of federal statutory interpretation. Whereas Ayres required resolution of the issue as to whether breach of the disclosure duty under the Safety Act

constitutes a federal mail and wire fraud crime, this case simply involves the issue as to whether Arrow's alleged acts of sending certain documents through the mail for the purpose of perpetrating fraud constitutes a violation of the federal mail fraud statute. See Complaint at ¶ 143. Moreover, the court need not necessarily reach this issue, as only two of the twelve predicate acts alleged in the complaint involve the federal mail fraud statute; the others concern theft by deception, theft by taking, the making of false, fictitious, and fraudulent statements, and other similar activities constituting acts of racketeering activity under O.C.G.A. § 16-14-3(9)(A). See Complaint at ¶¶ 133-142. Compare Ayres, 234 F.3d at 519 (noting that "establishing a violation of the federal mail and wire fraud statutes is an essential element of Plaintiffs' cause of action").

Therefore, the court concludes that the plaintiffs' state RICO claim does not present such a substantial issue of federal law as to confer federal subject matter jurisdiction in this court. See also Greaves v. McAuley, 264 F. Supp. 2d 1078, 1087 (N.D. Ga. 2003) (holding that the complaint's reference to federal securities regulations did not create federal question jurisdiction because "[u]nlike Ayres . . . , the resolution of [the plaintiff's] right to relief does not depend entirely on the interpretation of federal securities regulations"); Coker v. DaimlerChrysler Corp., 220 F.

Supp. 2d 1367, 1371-72 (N.D. Ga. 2002) (holding that the plaintiffs' state law claims concerning compliance with federal safety standards did not create federal question jurisdiction because "here, Defendant allegedly breached warranties that its vehicles complied with 'all' applicable safety standards, of which federal regulations are only one" and, thus, "[u]nlike Ayres, whether the Defendants violated federal regulations is not so essential to Plaintiffs' cause of action that Plaintiffs cannot prevail without such showing"); Jimenez v. Gregorio et al., Civil Action No. 1:03-CV-1638-BBM, at 17 (N.D. Ga. August 12, 2003) (declining to extend Ayres to a state RICO claim in which the federal question is less substantial than the one presented in that case and, therefore, holding that "[the plaintiff's] allegations of federal wire fraud as predicate acts in her Georgia RICO cause of action are insufficient to confer federal subject matter jurisdiction on this court").

Accordingly, the plaintiffs' motion to remand is GRANTED. However, the court denies the plaintiffs' request that they be awarded their expenses and fees associated with the removal of this action. Although 28 U.S.C. § 1447(c) allows a district court remanding an action to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal," the decision of whether to grant such an award is

within the court's discretion. See Garcia v. Amfels, Inc., 254 F.3d 585, 587 (5th Cir. 2001); Gray v. New York Life Ins. Co., 906 F. Supp. 628, 631 (N.D. Ala. 1995). In this case, the court finds that such an award would not be appropriate, as Arrow's position and its reliance on Ayres were not clearly unfounded.

**II.  The defendant's motion to reassign**

Because the court has determined that it lacks subject matter jurisdiction over this action and, therefore, that the case must be remanded, it does not consider Arrow's motion that the case be reassigned to another judge of this court.

### Conclusion

For the foregoing reasons, the plaintiffs' motion to remand [Doc. No. 2-1] is GRANTED and the defendant's motion to reassign [Doc. No. 6-1] is DENIED as moot.

SO ORDERED, this 30 day of June, 2004.

_____
CHARLES A. PANNELL, JR.
United States District Judge